UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) | |
| v. | ) ) | Case No. 14-CR-00272 (JSR) |
| LEE BRUCE STEWART, | ) ) ) | |
| *Defendant.* | ) ) | |

# UNITED STATES' 5K LETTER AND SENTENCING MEMORANDUM REGARDING LEE STEWART

| | |
|---|---|
| ANDREW WEISSMANN | JEFFREY D. MARTINO |
| Chief, Fraud Section | Chief, New York Office |
| CAROL SIPPERLY | MICHAEL T. KOENIG |
| Assistant Chief | Trial Attorney |
| BRIAN R. YOUNG | U.S. Department of Justice |
| Assistant Chief | Antitrust Division |
| U.S. Department of Justice | 450 5th Street, N.W. |
| Criminal Division | Washington, D.C. 20001 |
| 1400 New York Ave., N.W. | (202) 616-2165 |
| Washington, D.C. 20005 | |
| (202) 616-3114 | |



**U.S. Department of Justice**

Criminal Division

*Fraud Section*
*Bond Building*
*1400 New York Avenue, N.W.*
*Washington, D.C. 20530*

February 7, 2017

BY HAND AND ECF FILING

Chambers of the Honorable Jed S. Rakoff
U.S. District Court for the Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street Room 1340
New York, NY 10007

Re: United States v. Stewart, No. 14-cr-00272

Dear Judge Rakoff,

The government respectfully submits this letter to advise the Court of the pertinent facts concerning the assistance that Lee Stewart rendered in the investigation and prosecution of others. In light of these facts, and assuming that the defendant continues to comply with the terms of his cooperation agreement, commits no additional crimes before sentencing, and appears for his sentencing as scheduled on February 14, 2017, the government intends to move, pursuant to Section 5K1.1 of the Sentencing Guidelines, for a downward departure in light of substantial assistance provided by Mr. Stewart.

## I. BACKGROUND

### A. History and Characteristics of the Defendant

Lee Stewart, 53, is presently self-employed as a construction consultant in the United Kingdom. Mr. Stewart graduated from secondary school (high school) in 1981, and shortly thereafter he entered the banking industry. In 1993, Mr. Stewart joined Rabobank, where he worked as a U.S. Dollar derivative trader in London until 2009, when he resigned to care for his ailing father. Mr. Stewart has no criminal history and all available evidence suggests that, the instant offense notwithstanding, he is an upstanding person.

### B. Guilty Plea and Criminal Conduct

On March 23, 2015, Mr. Stewart appeared voluntarily in the United States to waive extradition from the U.K. and to plead guilty to the only count of an information charging him

with conspiracy to commit wire and bank fraud for his role in a scheme to manipulate the London Interbank Offered Rate (LIBOR). At the time of his guilty plea and during the trial of co-defendants Anthony Allen and Anthony Conti, who were convicted by a jury in November 2015, Mr. Stewart admitted that he and other Rabobank traders schemed to rig LIBOR by causing Rabobank to make LIBOR submissions to the British Bankers Association (BBA) that were calculated to benefit Rabobank's derivative positions rather than to reflect a good-faith estimate of Rabobank's borrowing costs, which is what the BBA's definition of LIBOR required. *E.g.*, Trial Tr. 250-53. The Court heard Mr. Stewart testify that he, along with other derivatives traders, regularly asked Mr. Conti (or another submitter, including Mr. Allen, if Mr. Conti was unavailable) to alter his LIBOR submissions to suit their positions and that Mr. Conti accommodated those requests. Trial Tr. at 234-36. Mr. Stewart also testified that he understood that his conduct was wrong – it was an attempt to trick counterparties to gain a monetary advantage, Trial Tr. 252-53; *see also* Plea Tr. 16 – and he was candid in admitting that he was not truthful when he was first interviewed. Trial Tr. 250. Mr. Stewart has been free on bond since his initial appearance and has committed no violations of the terms of his release.

C. Sentencing Guideline Calculation

The United States submits that, before a departure for substantial assistance, Mr. Stewart's adjusted offense level is 20, representing seven levels for a base offense under § 2B1.1(b)(1); fourteen levels for intended loss under § 2B1.1(b)(1)(H);[1] two levels for number of victims under U.S.S.G. § 2B1.1(b)(2)(A)(i); and a three-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a) and (b). Because Mr. Stewart has no criminal history, and is therefore in a Criminal History Category I, his sentencing Guidelines Range is 33-41 months in Zone D.

---

[1] The United States submits that Mr. Stewart should be held accountable for an intended loss of between $550,000 and $1,500,000, which is the loss enhancement that the Court applied for Messrs. Allen, Conti, Robson, and Thompson. The United States established its intended loss estimate for co-defendants Anthony Allen and Anthony Conti through the submission of a declaration by Federal Bureau of Investigation (FBI) analyst Kyle Dornbos and the Court ruled that the declaration was sufficient to support a loss of between $500,000 and $1,500,000. *See United States v. Uddin*, 551 F.3d 176, 180 (2d Cir. 2009) (district courts need not calculate loss with precision but need only make a reasonable estimate). The declaration was marked as Exhibit 226 and was filed at Dkt. 225. Rather than reproduce the arguments that it previously made in support of the proposition that the conspiracy had an intended loss of approximately $1.1 million, the United States rests on the points raised in part V(B) of the sentencing memorandum it submitted in support of Mr. Allen's sentencing. *See* Dkt. 225.

## II. Mr. Stewart's Cooperation

Mr. Stewart provided substantial assistance to the government in two meaningful ways. First, Mr. Stewart assisted in the prosecution of Anthony Allen and Anthony Conti by providing compelling testimony at their trial in October 2015, over the course of two days on the witness stand. But his two days of testimony understates the great personal and financial costs he incurred.

Mr. Stewart's cooperation began in early 2015 with his decision to waive extradition and appear voluntarily in the United States to enter a plea of guilty, which conserved judicial and prosecutorial resources in both the United States and the U.K. Mr. Stewart then submitted himself to numerous proffer and trial preparation sessions in the United States. Mr. Stewart agreed to meet wherever and whenever prosecutors proposed and on several occasions took time away from his business and family to travel to the United States. The in-person proffer and trial prep sessions involved Mr. Stewart sitting for hours in a conference room with prosecutors and agents reviewing trading data, audio recordings, and written electronic chats. At all times during his cooperation, Mr. Stewart tried his utmost to give complete and candid answers. Unlike many cooperating witnesses in economic crimes cases, Mr. Stewart was candid about his role in the scheme from the beginning of his cooperation with the Department of Justice and made no effort to "minimize" his role. That allowed prosecutors to use their time with Mr. Stewart to discuss the merits of the case instead of devoting energy to convincing him to accept responsibility for his actions.

The trial itself was physically draining for Mr. Stewart. He provided two days of testimony on direct and cross-examination. Mr. Stewart's cooperation and travel to the United States also took him away from caring for his elderly mother in the U.K. Notwithstanding these challenges, Mr. Stewart was an effective witness. He was candid about his culpability and helped the jury to understand dozens of communications laced with lingo and technical trading language. Mr. Stewart's explanations for how the scheme worked and why it was dishonest were persuasive.

Second, Mr. Stewart's waiver of extradition, guilty plea and cooperation, not only conserved judicial resources, but also likely affected co-defendant Paul Thompson's thought process when he decided to plead guilty (without cooperation),[2] and also may have helped influence Mr. Conti to waive extradition from the U.K.

---

[2] The government would have called Mr. Stewart as a witness against Mr. Thompson had he elected to proceed to trial and believes that Mr. Stewart would have rendered full cooperation.

### III. Conclusion

Because, as described above, Mr. Stewart provided substantial assistance in connection with the prosecution of Anthony Allen and Anthony Conti, conserved judicial resources, and improved the government's position with Mr. Thompson, the United States respectfully urges the Court to grant the 5K1.1 motion.

Very Truly Yours,

| | |
|---|---|
| ANDREW WEISSMANN | JEFFREY D. MARTINO |
| Chief, Fraud Section | Chief, New York Office |
| | |
| /s Brian R. Young | /s Michael T. Koenig |
| CAROL SIPPERLY | MICHAEL T. KOENIG |
| Assistant Chief | Trial Attorney |
| BRIAN R. YOUNG | U.S. Department of Justice |
| Assistant Chief | Antitrust Division |
| U.S. Department of Justice | 450 5th Street, N.W. |
| Criminal Division | Washington, D.C. 20001 |
| 1400 New York Ave., N.W. | (202) 616-2165 |
| Washington, D.C. 20005 | |
| (202) 616-3114 | |